FAULKNER, Justice.
This case involves a new policy of the City of Birmingham concerning the representation of employees by other employees in labor-management relations. The city policy was promulgated by Mayor Arrington by executive order. The order (36-81) forbids supervisory, managerial, or confidential employees from associating with rank and file employees, defines the terms “supervisor,” etc., and then implements the policy by finding all classifications other than entry level to be supervisory.
The statute under consideration in this cause is the Mayor-Council Act of 1955, which provides that “all powers of the city” and the right to “determine policies” or “the determination of all matters of policy” are vested in the City Council. (Sections 2.02 and 3.07).
On January 22, 1982, the plaintiff-appellant labor associations of employees of the City of Birmingham and various individuals who represent the interests of city employees filed suit against the City of Birmingham; its Mayor, Richard Arrington, Jr.; and its Director of Personnel, W. Gordon Graham. The complaint alleged the executive order was invalid, as it infringed on plaintiffs’ federal constitutional rights, and that the Mayor was without authority to issue it, as it created city policy which was a power reserved to the City Council by statute. The complaint prayed for preliminary and permanent injunctive relief, a declaratory judgment, attorney’s fees, and costs.
The defendants, the City, Mayor Arring-ton, and Personnel Director Graham, answered on March 5, 1982, alleging that the executive order was constitutional, valid, and enforceable.
Plaintiffs moved for summary judgment on both the policy issue and the constitutional issue. Briefs were submitted in support of the motion. Defendants filed a brief in opposition to the motion.
The trial judge overruled the motion for summary judgment as to the constitutional issue, continued the motion as to the policy issue, and pursuant to Rule 19(a), A.R. Civ.P., ordered that the members of the City Council of the City of Birmingham be joined as party defendants.
The plaintiffs then amended their motion for summary judgment, alleging that the executive order was partially unconstitutional in that it limited the rights of allegedly supervisory employees to associate among themselves, as well as with rank and file employees.
The motion for summary judgment as amended was submitted after argument. The trial court ruled that although the executive order created city policy, there was no material issue of fact that the Council had not created a comprehensive labor policy. Therefore, the Court held, the Mayor may “act in the interim.” Further, the Court stated that the executive order, in part, violated the constitutional rights of alleged supervisors to associate among themselves and to that extent it was unconstitutional and invalid. The order was made final on June 30, 1982.
Notice of appeal was filed on August 2, 1982. The City, Mayor, and Chief Personnel Officer cross-appealed.
The major issues in this appeal are:
(1) Whether the action of Mayor Arring-ton in issuing Executive Order 36-81 was an action within the line and scope of the authority of the Mayor *1287 under the provisions of the Mayor-Council Act of 1955 or whether it was a determination of a matter of policy, which is vested in the City Council under that act;
(2) If Executive Order 36-81 does cover areas which are the proper subject of a policy decision to be made by the City Council, but no such policy has been established, may the Mayor act in the interim? and
(3) Whether Executive Order 36-81 is unconstitutionally overbroad and vio-lative of the constitutional right of free association.
We opine that the trial court correctly found that the action of Mayor Arrington in issuing Executive Order 36-81 was a determination of a matter of policy which is vested in the City Council under the Mayor-Council Act of 1955.
Section 2.02 of the Mayor-Council Act provides:
“Pursuant to the provisions and limitations of this act and subject to the limitations imposed by the Constitution of Alabama and its law, all powers of the city shall be vested in the council elected as herein provided and hereinafter referred to as ‘the council’, which shall enact ordinances, adopt budgets and determine policies.” (Emphasis added.)
The powers of the Council are provided at Section 3.07, which provides that “the determination of all matters of policy, shall be vested in the council.”
Powers of the Mayor are enumerated in Section 4.06. Subsection 3 .empowers the Mayor to:
“Exercise administrative supervision and control over all departments created by this act or by law or hereafter created by the council except those enumerated in subdivisions a. to e. inclusive of subsection (2) of this section, and except those otherwise given independent status under this act.”
The Mayor-Council Act, does not define the word “policy.” However, in Webster’s Seventh New Collegiate Dictionary the word “policy” is defined as “a definite course or method of action selected from among alternatives and in light of given conditions to guide and determine present and future decisions.” “Policy” is also defined in Black’s Law Dictionary, Revised Fourth Edition, 1975, as “The general principles by which a government is guided in its management of public affairs, or the legislature in its measures.... This term, as applied to a law, ordinance, or rule of law, denotes its general purpose or tendency considered as directed to the welfare or prosperity of the state or community.”
Case law also supports the trial court’s determination that the action of the Mayor in issuing an executive order was a determination of a matter of policy. For instance, when the United States Supreme Court was dealing with a labor-management question in the private sector, the Court found the matter to be one of policy to be determined by the legislative branch. Packard Motor Co. v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1946). Similarly, in National Labor Relations Board v. Edward G. Budd Mfg. Co., 169 F.2d 571 (6th Cir.1948), the Court held that the National Labor Relations Act and the provisions thereof are “policy.”
Thus, the trial court correctly found that the general framework of the relationship between the City and its employees is a policy decision. As stated by the trial court in its order:
“Thus, the power to establish the general relationship or position of the City in regard to its employees is vested in the City Council, not the Mayor. Once such a policy has been established, it will be the Mayor’s responsibility to implement the policy on a day-to-day basis. In other words, after the City Council has adopted a policy in relation to the employee organizations, it will be up to the Mayor to establish the procedures for implementing that policy.”
We opine that the trial court erred, however, in making the conclusion that the Mayor may promulgate a comprehensive policy when the Council fails to do so. The *1288 trial court cited no authority for its position; nor do we find any which sustains it.
The facts show that for many years there has been an ongoing relationship between labor and management which has functioned fairly smoothly. Also, it should be pointed out that the Council did not totally fail to act. The record shows the Council has twice addressed the question of who may be members of Local 1317 of the Federation of City Employees. The Council has also addressed the right of police officers to form labor unions and the right of waterworks employees to associate.
The trial court, however, stated that in the absence of action by the City Council to enact a comprehensive policy, the Mayor “... must have the authority to establish such procedures as are necessary to deal with the day-to-day contact between the City and its employee organizations.”
In our opinion the trial court’s ruling is similar to saying that whenever the Council fails to enact an ordinance or resolution governing a given subject, then the Mayor may issue an executive order dealing with the subject matter because there is no law to the contrary. This, however, is contrary to the entire American system of separation of powers and checks and balances between branches of government. See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 593-94, 72 S.Ct. 863, 888-889, 96 L.Ed. 1153 (1952).
In Youngstown, President Truman issued an executive order directing the seizure of certain steel mills and operation of them under federal direction, without first seeking congressional authorization. The President issued his order under the guise of acting in the national interest. The United States Supreme Court ruled, however, that his action was an unconstitutional usurpation of legislative authority. Justice Black, writing the majority opinion for the Court, stated, “In the framework of our Constitution, the President’s power to see that the laws are faithfully executed refutes the idea that he is to be a law maker.” 343 U.S. at 587, 72 S.Ct. at 866.
Similarly, in Marshalk Co., Inc. v. Iran Nat. Airlines Corp., 518 F.Supp. 69 (S.D.N.Y.1981), the United States District Court held that the President invaded the jurisdiction of Congress and the judicial branch and violated the doctrine of separation of powers by terminating legal proceedings involving an advertising agency’s commercial claim which arose out of a commercial transaction to be performed wholly within United States territory. Citing Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), the Marshalk Court stated: “It would be ‘manifestly contrary’ to the objectives of the Framers of the Constitution to construe Article II as permitting the President to exercise such power under an executive agreement without observing the balance of powers embodied in the Constitution.” 518 F.Supp. at 91.
For the foregoing reasons, we rule that the trial court erred in concluding that the Mayor may promulgate a comprehensive policy when the Council fails to do so. Because we have ruled that Mayor Arrington exceeded the bounds of his authority as mayor in issuing the executive order, we deem it unnecessary to determine whether the order was overbroad and violative of the right of free association.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, ALMON and EMBRY, JJ., concur.
SHORES, BEATTY and ADAMS, JJ., dissent, with opinion by SHORES, J.